CHUTICH, Justice.
In this appeal, we consider whether the district court (1) abused its discretion when it did not accept appellant Ryan Petersen's straight guilty plea to second-degree intentional murder and (2) based its finding of premeditation on sufficient evidence. In April 2016, Petersen, a client of Northstar Criminal Defense, went to the law firm's office and shot and killed the firm's law clerk. The State initially filed a complaint charging Petersen with second-degree intentional murder. At his second court appearance, Petersen attempted to plead guilty to this charge. The district court refused to accept Petersen's plea, however, when it learned that the State had amended its complaint to charge first-degree premeditated murder and was seeking a grand jury indictment. A grand jury indicted Petersen for first-degree murder 5 days later. Following a bench trial, the district court convicted and sentenced Petersen to life in prison without the possibility of release. Because the district court did not abuse its discretion in rejecting the plea, and because the circumstantial evidence is consistent with first-degree *4 premeditated murder and inconsistent with any other rational hypothesis, we affirm.
FACTS
The facts underlying the murder of Chase Passauer are not in dispute. Ryan Petersen hired D.A., from Northstar Criminal Defense, in March 2016, to represent him for criminal and civil matters. Petersen agreed to pay a flat fee of $10,000 for D.A.'s services, and he had paid a total of $7,000 to D.A. as of April 7, 2016, when Petersen terminated D.A.'s representation.
On April 7, over a span of about 3 hours, a series of text messages exchanged between Petersen and D.A. about a parking issue and legal fees escalated to Petersen's murder of D.A.'s law clerk, 23-year-old Chase Passauer. That day, Petersen sent a text message to D.A., urgently requesting that D.A. call him. D.A. promptly responded by text message, informing Petersen that he could not call because he was preparing for court. D.A. suggested that Petersen contact Passauer at the firm's office to see if he could be of help. An hour later, Petersen sent another text message to D.A., explaining that he needed urgent help with a parking issue. D.A. replied within the hour, stating that he would not assist with the parking issue. Petersen then terminated D.A.'s representation and demanded that D.A. refund the $7,000 that Petersen had paid to D.A.
Petersen also communicated with his girlfriend during this time. He texted her about the parking issue and said that he was going to get his money back from his lawyer. Petersen told her in a phone call that he was going to shoot his lawyer.
Angry and intent on getting his money back, Petersen left his business in St. Paul's East Side neighborhood and drove about 5 miles to the law firm's office in St. Paul's Cathedral Hill neighborhood. With his loaded .40-caliber semiautomatic handgun concealed under his clothes on his waistband, he then entered the building, climbed the stairs, and entered the unlocked doors to the law office.
When Petersen entered the reception area, he noticed that the lights were not on in D.A.'s office. He confronted Passauer, who was alone in the office, sitting at the reception desk, about the whereabouts of D.A. Passauer responded that he did not know where D.A. was.
Petersen pulled out his gun and, from a distance of 3-to-5 feet, shot Passauer in the chest five times. Petersen then left the reception area, shooting Passauer three more times through a glass window separating the entryway from the reception area. For each shot fired, Petersen had to pull the gun's trigger. All eight shots hit Passauer in the chest.
Petersen fled the building, leaving Passauer to die in his chair from the gunshot wounds. Petersen did not alert emergency responders of Passauer's injuries. But he sent text messages and called friends and family, specifically telling one friend that he "shot his lawyer" and that the lawyer "was gone for good." Petersen then drove to Wisconsin and threw his weapon and ammunition into a lake. Upon his return to Minnesota, police officers arrested him.
The State filed a complaint against Petersen the next day, charging Petersen with second-degree intentional murder. Petersen had his first court appearance 3 days later, during which he received a copy of the complaint, bail was set, and a second court appearance was scheduled. The parties dispute whether the second court appearance was a Rule 8 second appearance or a Rule 11 Omnibus Hearing. See Minn. R. Crim. P. 8, 11.
Just before the second court appearance, Petersen informed the State that he *5 intended to enter a straight guilty plea to the second-degree intentional murder charge. In response, before the court appearance began, the State filed an amended complaint charging first-degree premeditated murder, and it notified the court that it would be convening a grand jury to consider that charge. During the scheduled court appearance, Petersen attempted to plead to the second-degree murder charge in the original complaint. The district court did not accept Petersen's plea because of the State's amended complaint and notice of grand jury proceedings. After the grand jury indicted Petersen for first-degree murder, Petersen moved to dismiss the indictment, arguing that the district court erred when it refused to accept his plea. The district court denied Petersen's motion.
After a bench trial, the district court found sufficient evidence to conclude, beyond a reasonable doubt, that Petersen premeditated the murder of Passauer. Finding that Petersen's girlfriend-who testified that Petersen told her that he was going to shoot his lawyer-was a credible witness, the district court concluded that the girlfriend's testimony alone was sufficient to support a finding of premeditation.
The district court also concluded that, apart from the girlfriend's testimony, the record included sufficient circumstantial evidence to establish premeditation beyond a reasonable doubt. The district court found that Petersen was "angry and upset" over D.A.'s "perceived failure to assist him and to return his money." Moreover, the court found that:
[Petersen] testified that if [D.A.] refused to give him the money he would probably punch him in the face. [Petersen] clearly contemplated violence in securing the return of his money. With that in mind, he drove several miles to [D.A.]'s office, walked up a flight of stairs, entered the law firm office, did not find [D.A.] as expected, and was dissatisfied with [Passauer's] inability to help. He reached under his jacket to pull his loaded gun from his waist. He fired five rounds into [Passauer]. As he walked out, he fired three more rounds into [Passauer] through a plate glass window.
Accordingly, the district court concluded that the circumstantial evidence proved beyond a reasonable doubt that Petersen premeditated Passauer's murder.
The district court found Petersen guilty of first-degree premeditated murder, second-degree intentional murder, and illegal possession of a firearm. See Minn. Stat. §§ 609.185(a)(1) ; 609.19, subd. 1(1) ; 624.713, subds. 1(2), 2 (b) ; 609.11, subd. 5 (2016). It sentenced Petersen to life imprisonment without the possibility of parole. This direct appeal followed.
ANALYSIS
I.
We first consider whether the district court erred when it rejected Petersen's attempt to enter a straight guilty plea. Petersen asserts that because he attempted to plead guilty at an Omnibus Hearing, rather than a Rule 8 Hearing, the district court had no authority to reject his guilty plea. He argues that the plain language of the Minnesota Rules of Criminal Procedure limits when a district court may reject a defendant's plea. Petersen acknowledges that a district court can reject a defendant's plea during a Rule 8 Hearing, but he contends that Rule 11, governing Omnibus Hearings, provides the court with no similar authority.
Petersen bases his argument solely on the Minnesota Rules of Criminal Procedure. We review the interpretation of the Minnesota Rules of Criminal Procedure *6 de novo. Ford v. State , 690 N.W.2d 706, 712 (Minn. 2005). We follow the plain language of a rule if the language is clear and unambiguous. State v. Dahlin , 753 N.W.2d 300, 305 (Minn. 2008). Here, regardless of whether the second court appearance was a hearing under Rule 8 or Rule 11, nothing within the text of the Minnesota Rules of Criminal Procedure required the district court to accept Petersen's plea. Before Petersen attempted to plead guilty to second-degree intentional murder, the prosecutor had amended the complaint to charge a greater offense and had given the court notice of the State's intent to convene a grand jury. Notably, Petersen does not challenge the State's amended complaint as a defective charging instrument on appeal.
Accordingly, we hold that, under these circumstances, the district court did not abuse its discretion when it refused to accept Petersen's straight guilty plea to second-degree intentional murder. See Minn. R. Crim. P. 3.04, subd. 2(b) (providing that the State may amend a criminal complaint if "the evidence presented establishes probable cause to believe that the defendant has committed a different offense from that charged in the complaint, and the prosecutor intends to charge the defendant with that offense"); see also State v. Bluhm , 460 N.W.2d 22, 24 (Minn. 1990) (noting that the State is "relatively free" to amend its criminal complaint in pre-trial proceedings); State v. Linehan , 276 Minn. 349, 150 N.W.2d 203, 206 (1967) (holding that there is no "absolute right on the part of a defendant to plead guilty," but a court may, in its discretion, "allow [a defendant] to do so in proper cases").
II.
We next consider whether sufficient evidence supports the district court's conclusion of law that the State proved premeditation beyond a reasonable doubt. Petersen argues that evidence admitted at trial was insufficient to support a finding of premeditation. He contends that the evidence merely shows that his killing of Passauer was rash, impulsive, and unforeseen. We disagree.
We "use the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence." State v. Palmer , 803 N.W.2d 727, 733 (Minn. 2011). The relevant standard of review depends on whether the factfinder (the district court here) reached its conclusion of law based on direct or circumstantial evidence. See, e.g. , State v. Harris , 895 N.W.2d 592, 598 (Minn. 2017) ("For approximately a century, we have applied a separate standard of review to challenges to the sufficiency of circumstantial evidence."); Bernhardt v. State , 684 N.W.2d 465, 477 (Minn. 2004) ("Circumstantial evidence is entitled to the same weight as direct evidence; however, if a conviction is based on circumstantial evidence, a higher level of scrutiny is warranted."). Here, the district court determined that, based on circumstantial evidence, the State proved beyond a reasonable doubt that Petersen premeditated the murder of Passauer.[1]
Under the heightened two-step test for the sufficiency of circumstantial evidence, we first identify the circumstances proved by the State, giving deference *7 to the factfinder's "acceptance of the State's evidence and its rejection of any evidence in the record that is inconsistent with the circumstances proved by the State." Loving v. State , 891 N.W.2d 638, 643 (Minn. 2017). We assume that the "factfinder disbelieved any testimony conflicting with that verdict." State v. Leake , 699 N.W.2d 312, 319 (Minn. 2005) ; see also State v. Fleck , 777 N.W.2d 233, 236 (Minn. 2010) ("The [factfinder] is in the best position to weigh credibility and thus determines which witnesses to believe and how much weight to give their testimony.").
Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt." Loving , 891 N.W.2d at 643 (internal citations omitted) (internal quotations omitted). Here, we do not defer to the factfinder; rather, we engage in our "own examination of the reasonableness of the inferences." Palmer , 803 N.W.2d at 733. "If a reasonable inference other than guilt exists, then we will reverse the conviction." Loving , 891 N.W.2d at 643. But if circumstantial evidence forms "a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt," then we will uphold the conviction. State v. Al-Naseer , 788 N.W.2d 469, 473 (Minn. 2010) (citation omitted) (internal quotation marks omitted).
To be guilty of first-degree murder, a person must "cause[ ] the death of a human being with premeditation and with intent to effect the death of the person or of another." Minn. Stat. § 609.185(a)(1). " '[P]remeditation' means to consider, plan or prepare for, or determine to commit, the act ... prior to its commission." Minn. Stat. § 609.18 (2016). A defendant "does not have to engage in extensive planning or deliberate for a specific amount of time," but "the formation of intent and premeditation cannot occur simultaneously." Loving , 891 N.W.2d at 644.
To prove premeditation, the State must show that "after the defendant formed the intent to kill, some appreciable time passed during which the consideration, planning, preparation or determination ... prior to the commission of the act took place." Id. (citation omitted) (internal quotation marks omitted); see also State v. Moore , 481 N.W.2d 355, 361 (Minn. 1992) (same). "What is required is that the circumstances lead so directly to a finding of premeditation as to exclude, beyond a reasonable doubt, any reasonable inference other than that of guilt of premeditated murder." Moore , 481 N.W.2d at 361. We consider the evidence "as a whole, including the actions taken by the defendant before and after the crime, to determine whether premeditation existed." Loving , 891 N.W.2d at 644.
"We have previously observed that an inference of premeditation may be supported by several categories of evidence, including planning activity, motive, the nature of the killing, and a defendant's actions following the killing." State v. Cox , 884 N.W.2d 400, 412 (Minn. 2016). We consider each of these categories in turn.
"Planning activity relates to facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing." State v. Anderson , 789 N.W.2d 227, 242 (Minn. 2010) ; see also Cox , 884 N.W.2d at 412 (possessing the murder weapon before the murder was planning activity); State v. Clark , 739 N.W.2d 412, 423 (Minn. 2007) (bringing the murder weapon to the scene of the murder was planning activity); State v. Austin , 332 N.W.2d 21, 25 (Minn. 1983) (walking up a *8 set of stairs to commit a murder supported an inference of premeditation).
Evidence of motive "strengthens a finding that [the] defendant deliberated over his actions and weakens the argument that the killing was spontaneous." Moore , 481 N.W.2d at 362. Motive evidence includes "prior threats by the defendant to injure the victim, plans or desires of the defendant that would have been facilitated by the victim's death, and prior conduct by the victim known to have angered the defendant." State v. Moua , 678 N.W.2d 29, 41 (Minn. 2004) ; see also Loving , 891 N.W.2d at 644 (arguing over money showed motive).
Regarding the nature of the killing, we have looked at "the number of wounds inflicted, infliction of wounds to vital areas, [and] infliction of gunshot wounds from close range," State v. McArthur , 730 N.W.2d 44, 50 (Minn. 2007), as well as the period of time between the infliction of wounds and firing additional shots after the victim was incapacitated, State v. Buchanan , 431 N.W.2d 542, 547-48 (Minn. 1988) (shooting a victim once, pausing, walking around the victim, and firing two more shots supported an inference of premeditation). See also Cox , 884 N.W.2d at 414 (incapacitating a victim by shooting a victim and then "paus[ing] between the first, second, and third shots" supported an inference of premeditated murder).
Concerning a defendant's conduct after the murder, evidence showing that a defendant left a victim with no means to seek the help necessary to prevent the victim's death and evidence that a defendant disposed of a murder weapon after a murder support an inference of premeditation. See, e.g. , McArthur , 730 N.W.2d at 50 (worrying about escape rather than "rendering aid to the victim" supported an inference of premeditation); Leake , 699 N.W.2d at 321 (disposing of evidence of a murder by burning it in a fire supported an inference of premeditation).
Applying the heightened test and analyzing the circumstances proved, we conclude that the only reasonable inference to be drawn from the totality of the evidence is that Petersen's murder of Passauer was a premeditated act. See State v. Andersen , 784 N.W.2d 320, 332 (Minn. 2010) (explaining that we consider the circumstances proved as a whole, not each circumstance proved in isolation). Petersen's planning activity, his motive, the nature of the killing, and his actions following the killing support a finding of premeditation. Petersen drove 5 miles to the law firm armed with a .40-caliber semiautomatic handgun, determined to get his money back. Once he arrived, he climbed a set of stairs, entered the law office, and asked Passauer a question. Dissatisfied with Passauer's response, Petersen decided to remove his gun from his waistband, point the gun directly at Passauer, and pull the gun's trigger five separate times to fire five bullets into Passauer's chest at close range. He then stopped shooting and started to leave the law office. But before leaving, he decided to pull the trigger three more times to fire three more bullets into Passauer's chest. All of the shots fired hit Passauer in a vital area. Petersen then left Passauer to bleed to death from the gunshot wounds ; instead of helping Passauer, Petersen chose to escape and to dispose of the murder weapon in a Wisconsin lake. He then told friends and family that he shot his lawyer. Petersen's decisions and actions in no way suggest rash impulse; they show calculated actions that support the district court's finding of premeditation beyond a reasonable doubt.
In sum, considering the circumstances proved as a whole, and independently examining the reasonableness of all inferences that might be drawn from these *9 circumstances, we conclude that only one reasonable conclusion can be drawn: Petersen premeditated the death of Passauer. The circumstances proved are not consistent with Petersen's alternative hypothesis-that he shot Passauer in a rash impulse.[2]
CONCLUSION
For the foregoing reasons, we affirm the decisions of the district court.
Affirmed.
GILDEA, C.J., took no part in the decision of this case.

The district court also found that Petersen's statement to his girlfriend before the murder that he was going to shoot his lawyer was alone sufficient to prove premeditation. In so ruling, the district court did not specify whether it considered the statement to be direct or circumstantial evidence. We need not decide that issue here because, even without considering the girlfriend's statement, the proven circumstantial evidence was sufficient to support the district court's finding of premeditation.

In an alternative argument, the State also asserts that Petersen premeditated the murder of Passauer through the doctrine of transferred intent by premeditating the murder of D.A., but then deciding to kill a related target, Passauer. Because we conclude that circumstantial evidence supports the district court's finding that Petersen premeditated the murder of Passauer, we need not consider that doctrine here.