*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0406**

State of Minnesota,
Respondent,

vs.

Raymond Allen Torgerson,
Appellant.

**Filed January 8, 2024**
**Affirmed**
**Florey, Judge**[*]

Aitkin County District Court
File No. 01-CR-22-565

Keith Ellison, Attorney General, St. Paul, Minnesota; and

James P. Ratz, Aitkin County Attorney, Sebastian Mesa, Assistant County Attorney, Aitkin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Florey, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FLOREY**, Judge

In this direct appeal, appellant challenges his conviction for introducing a dangerous weapon into jail. He argues the evidence was insufficient to support his conviction and the district court erred in its jury instructions. We affirm.

## FACTS

On July 8, 2022, respondent State of Minnesota charged appellant Raymond Allen Torgerson in Aitkin County with four offenses—including felony introduction of a dangerous weapon into a jail in violation of Minn. Stat. § 641.165, subd. 2(b) (2020)—relating to an encounter with law enforcement.[1] The following version of events, relevant to the issues on appeal, is taken from the testimony and evidence presented at trial.

On July 7, 2022, Officer Aaron Cook of the Aitkin County Sheriff's Office was dispatched to a report that a man, later identified as Torgerson, had acted inappropriately at the Aitkin County fairgrounds. Cook looked for Torgerson and eventually spotted Torgerson riding a bicycle. Cook pulled his squad car behind Torgerson, activated his lights and siren, and told Torgerson to stop. Torgerson turned around and approached Cook. Cook told Torgerson about the report. Cook testified that Torgerson seemed intoxicated during their encounter, became increasingly upset, and tried to leave. Officer

---

[1] Torgerson was also charged with misdemeanor fourth-degree assault of a peace officer in violation of Minn. Stat. § 609.2231, subd. 1(b) (2020); misdemeanor disorderly conduct in violation of Minn. Stat. § 609.72, subd. 1(3) (2020); and misdemeanor obstruction of legal process in violation of Minn. Stat. § 609.50, subd. 1(2) (2020).

Riedel and Officer Koonce eventually arrived at the scene, and Torgerson was placed under arrest.

Koonce, who had prior experience with Torgerson, advised Cook that Torgerson may have a knife on him. Koonce advised Cook that he had discovered a knife in Torgerson's boot during a previous interaction. At the time Cook learned this information, Torgerson was talking to Riedel, and so Cook did not know if Torgerson heard Koonce tell him about the earlier encounter. Cook searched Torgerson by patting around his ankles and feeling down into the sides of his shoes but did not find a knife.

Torgerson was put into the back seat of Cook's squad car and transported to the jail. Torgerson was not asked whether he had anything on him, such as a knife or other contraband, that should not go into the jail. Cook walked Torgerson into the jail through the booking room. As part of the booking process, Torgerson was required to change out of his clothing. While doing so, a ceramic steak knife fell out of his shoe. Torgerson stated, "if you would have asked me about it, I would have told you."

The district court instructed the jury as to the elements of introducing a dangerous weapon into a jail:

> First, that the Defendant brought, sent or in any manner caused to introduce into the Aitkin County Jail a dangerous weapon.
>
> "Dangerous weapon" is any device designed as a weapon and capable of producing death or great bodily harm, or other device or instrumentality that in the manner in which it's used or intended to be used is calculated or likely to produce death or great bodily harm.
>
> Second, that the Defendant's act was done without the consent of the person in charge.

> Third, that the Defendant's act occurred on or about July 7th, 2022, in Aitkin County.

The jury found Torgerson guilty of felony introduction of a dangerous weapon into a jail and misdemeanor obstruction of legal process.[2] Torgerson appeals his conviction for introducing a dangerous weapon into a jail in violation of Minn. Stat. § 641.165, subd. 2(b).

## DECISION

Torgerson asserts that his conviction for introduction of a dangerous weapon into a jail, in violation of Minn. Stat. § 641.165, subd. 2(b), must be reversed because the evidence is insufficient to establish his guilt beyond a reasonable doubt. Torgerson also argues the district court erred in its jury instructions.

## I.    Sufficiency of the Evidence.

In considering a claim of insufficient evidence, this court conducts a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the verdict, is sufficient to allow the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). Ordinarily, this court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

---

[2] Torgerson was acquitted of the fourth-degree assault-of-a-peace-officer and disorderly-conduct charges.

Convictions based upon circumstantial evidence merit "heightened scrutiny" on appeal. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). In these cases, the "[c]ircumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). A defendant's intent is a state of mind, which is generally proven circumstantially "by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997).

Torgerson argues that the evidence is insufficient to establish the "mens rea" and "dangerous weapon" elements of section 641.165, subdivision 2(b). We address each argument in turn.

### A. Mens Rea

First, Torgerson argues that the evidence is insufficient to establish, beyond a reasonable doubt, that he had the requisite mens rea to be convicted of violating Minn. Stat. § 641.165, subd. 2(b).

The meaning of a criminal statute is intertwined with the issue of whether the state proved beyond a reasonable doubt that the defendant violated the statute. *State v. Vasko*, 889 N.W.2d 551, 556 (Minn. 2017); *see also State v. Degroot*, 946 N.W.2d 354, 360 (Minn. 2020). "A sufficiency-of-the-evidence claim that turns on the meaning of the statute under which a defendant has been convicted presents a question of statutory interpretation that we review de novo." *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019). Therefore, we must first interpret Minn. Stat. § 641.165, subd. 2(b), to determine the scope of the

mens rea—if any—required by the statute before considering whether the evidence is sufficient to support Torgerson's conviction. Minn. Stat. § 641.165, subd. 2(b), states that "[w]hoever introduces or in any manner causes the introduction of a dangerous weapon, as defined in section 609.02, subdivision 6, into any jail . . . without the consent of the person in charge . . . is guilty of a felony." As written, the statute contains no express mens rea requirement. But neither party argues that Minn. Stat. § 641.165, subd. 2(b), is a strict liability offense, and the state concedes there is a mens rea requirement to Minn. Stat. § 641.165, subd. 2(b). We therefore assume, without deciding, that the offense does not impose strict liability.

Torgerson argues the mens rea requirement of Minn. Stat. § 641.165, subd. 2(b), is "willfully" and "intentionally." We are not persuaded. First, supreme court precedent supports that when a statute lacks an explicit mens rea requirement and is not a strict liability offense, the required mens rea is knowledge. *See, e.g., State v. Ndikum*, 815 N.W.2d 816, 822 (Minn. 2012) (reading a knowledge requirement into possession-of-a-pistol-in-public statute); *In re Welfare of C.R.M.*, 611 N.W.2d 802, 810 (Minn. 2000) (reading a knowledge requirement into possession-of-a-knife-while-on-school-property statute); *State v. Florine*, 226 N.W.2d 609, 610 (1975) (reading a knowledge requirement into possession-of-a-controlled-substance statute). Torgerson does not present any argument that this court should, and we find no reason to, depart from this established precedent.

Second, Torgerson relies on *State v. Strong*, 294 N.W.2d 319, 319-20 (Minn. 1980), to argue that the mens rea requirement for the offense of introduction of contraband into a

correctional facility is "intentional" and "willful." We are not persuaded based on the context of the supreme court's reasoning. "The interpretation of case law is a legal question that is reviewed de novo." *State v. Robideau*, 796 N.W.2d 147, 150 (Minn. 2011). In *Strong*, the state's complaint charged the defendant with "willfully and intentionally taking contraband with him into the state prison" in violation of Minn. Stat. § 243.55 (Supp. 1979). 294 N.W.2d at 320. The state moved to strike from the complaint, as surplusage pursuant to Minn. R. Crim. P. 17.04, the words "willfully" and "intentionally." *Id.* at 319. The district court denied the state's motion and the state appealed. *Id.* The supreme court affirmed the district court's decision noting, "[w]e see no reason why the element of scienter should be dispensed within this situation and we are not convinced that the legislature intended to do so." *Id.* at 320. Torgerson asserts that the supreme court's decision in *Strong* incorporated a "willfully and intentionally" mens rea requirement into Minn. Stat. § 243.55. And because Minn. Stat. § 641.165, subd. 2(b), mirrors the language of Minn. Stat. § 243.55, Torgerson argues that Minn. Stat. § 641.165, subd. 2(b), should also be read to require the state to prove that the defendant acted both willfully and intentionally.

The court's analysis in *Strong* focused on whether Minn. Stat. § 243.55 was a strict liability offense—an offense that does not have a mens rea requirement. N.W.2d at 319-20. The court in *Strong* ultimately concluded that Minn. Stat. § 243.55 was not a strict liability offense and that the statute required the state to prove scienter as an element. *Id.* at 320. The court likened Minn. Stat. § 243.55 to a statute criminalizing the possession of a controlled substance "requiring conscious possession with actual knowledge of the nature

7

of the substance." *Id.* Consistent with this language, the supreme court has since referred to *Strong* as an example of where the court will read a knowledge requirement into a statute that lacks an explicit mens rea requirement. *See, e.g.*, *Ndikum*, 815 N.W.2d at 819 (stating *Strong* "required the state to show that the defendant knew he possessed the item"); *State v. Arkell*, 672 N.W.2d 564, 568 (Minn. 2003) (stating *Strong* "required the state to show that the defendant had knowledge of possession of the offensive item"); *C.R.M.*, 611 N.W.2d at 808 (stating *Strong* "required the state to show that the defendant had knowledge of possession of the offensive item").

Because there is no argument before us that Minn. Stat. § 641.165, subd. 2(b), is a strict liability offense, we assume without deciding, that the mens rea required would be knowledge. Therefore, for purposes of our sufficiency of the evidence analysis, we assume the state was required to establish Torgerson's knowledge of the knife. "The [s]tate ordinarily proves a criminal defendant's mental state by circumstantial evidence." *State v. Bahtuoh*, 840 N.W.2d 804, 809 (Minn. 2013). Circumstantial evidence is "evidence from which the fact[-]finder can infer whether the facts in dispute existed or did not exist." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). This court reviews the sufficiency of circumstantial evidence by conducting a two-step analysis. *State v. German*, 929 N.W.2d 466, 472 (Minn. App. 2019) (citing *Hanson*, 800 N.W.2d at 622).

First, this court must identify the circumstances proved. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). Appellate courts "assume that the jury resolved any factual disputes in a manner that is consistent" with the verdict. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). Second, we determine "whether the circumstances proved are consistent

with guilt and inconsistent with any rational hypothesis other than guilt." *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017) (quotation omitted). We do not defer to the fact-finder's choice between reasonable inferences. *Silvernail*, 831 N.W.2d at 599. We will reverse the conviction if a reasonable inference other than guilt exists. *Loving*, 891 N.W.2d at 643. But we will uphold the verdict if the circumstantial evidence forms "a complete chain" that leads "directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Peterson*, 910 N.W.2d 1, 7 (Minn. 2018) (quotation omitted).

Here, the circumstances proved are that:

- On a prior occasion, Koonce arrested Torgerson and had asked Torgerson if he had any weapons. At that time, Torgerson replied that he had a knife in his sock, which was turned over to Koonce prior to Torgerson entering the jail;

- After Torgerson was arrested for the instant offense, Koonce told Cook to search Torgerson's person for a knife and informed Cook of the knife that Torgerson possessed during his prior arrest;

- Torgerson was near Cook when Koonce was relaying this information to Cook but was talking to another officer and the officers did not know if Torgerson heard them discuss the prior occasion of Torgerson carrying a knife on his person;

- Cook searched Torgerson for weapons by patting his ankles and inserting his fingers into Torgerson's shoes, but he found none;

- Torgerson was placed in the squad car and transported to the jail;

- The officers did not ask Torgerson if he had a weapon, or other contraband, on him before bringing him to the jail;

9

- During the booking process at the jail, when Torgerson took off his shoes and socks, a small, ceramic kitchen knife fell onto the booking-room floor;

- Torgerson stated at that time, "if you would have asked me about it, I would have told you."

Torgerson asserts that even if the mens rea required by Minn. Stat. § 641.165, subd. 2(b), is knowledge, the state failed to prove that he knowingly caused the knife to be introduced into the jail. Torgerson argues there is a rational hypothesis inconsistent with his guilt—that he had the knife on him before police stopped him and he did nothing to cause it to be introduced into the jail after he knew they were taking him there. We are not persuaded.

The hypothesis Torgerson presents is not inconsistent with a finding that Torgerson knowingly possessed the knife at the jail. The hypothesis does not assert that Torgerson did not know he possessed the knife or did not know he was going to the jail. In light of the circumstances proved, Torgerson has failed to meet his burden to present a reasonable inference other than guilt. It is not reasonable to conclude Torgerson unknowingly possessed the knife in light of the circumstances proved, which include that the knife was a ceramic kitchen knife and that the knife was in Torgerson's shoe. It is also not reasonable to conclude that Torgerson unknowingly introduced the knife into the jail in light of the circumstances proved that Torgerson had been searched for weapons by Cook—which included patting Torgerson's ankles and shoes; and that after the knife became visible at the jail, he said, "if you would have asked me about it, I would have told you." Considered

10

as a whole, the circumstances proved only lead to one rational inference—Torgerson knew he possessed the knife and knew he possessed the knife at the jail.

Torgerson also argues the state failed to present sufficient evidence that he voluntarily engaged in a prohibited act. *See State v. Fleck*, 810 N.W.2d 303, 309 (Minn. 2012) ("[R]egardless of whether an offense is described as a specific- or general-intent crime, a defendant must voluntarily do an act or voluntarily fail to perform an act." (quotation omitted)); *State v. Pederson*, 840 N.W.2d 433, 436 (Minn. App. 2013) ("The defendant must have engaged in a volitional act and not merely acted accidentally."). Torgerson does not offer any rational inference from any evidence showing that he accidentally or involuntarily possessed the knife. The evidence sufficiently supports the jury's finding that Torgerson knowingly introduced the knife into the jail. *See State v. Lampkin*, 978 N.W.2d 286, 290 (Minn. App. 2022), *aff'd on other grounds*, 994 N.W.2d 280 (Minn. 2023).

### B.   *Dangerous Weapon*

Torgerson also argues that the state failed to prove beyond a reasonable doubt that the knife he possessed was a dangerous weapon. A dangerous weapon is "any device designed as a weapon and capable of producing death or great bodily harm" or any other "device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Minn. Stat. § 609.02, subd. 6 (2020); *see* Minn. Stat. § 641.165, subd. 2(b) (stating that "dangerous weapon" has the meaning given in section 609.02, subdivision 6).

Torgerson argues that the state "presented absolutely no evidence that [he] intended to use the ceramic knife in the jail in a way that was calculated or likely to produce death or serious bodily harm." Here, the circumstances proved regarding the nature of the knife include that the knife was a steak knife or a small kitchen knife and that the knife was hidden in Torgerson's shoe. Torgerson asserts that there is no evidence to demonstrate that he intended to use the knife to cause great bodily harm. However, Torgerson has failed to present any reasonable inference as to the knife's intended use, in light of the circumstances proved, that would be inconsistent with his guilt.

It is not reasonable to conclude, absent any assertion to the contrary, that the knife hidden in Torgerson's shoe was not intended to be used in self-defense or a manner that would be likely to cause death or great bodily harm. *See, e.g., State v. Coauette*, 601 N.W.2d 443, 447 (Minn. App. 1999) (observing that ordinary objects can be transformed into dangerous weapons and citing examples), *rev. denied* (Minn. Dec. 14, 1999); *State v. Patton*, 414 N.W.2d 572, 574 (Minn. App. 1987) (stating that defendant brandished a kitchen knife in such a manner that jury could have found it was used as a dangerous weapon). We conclude that the circumstances proved lead to one rational inference—the knife in Torgerson's shoe, in the manner which it was intended to be used, was likely to produce death or great bodily harm.

## II.    Jury Instructions.

Finally, Torgerson argues that the district court erred in failing to instruct the jury on the mens rea element of Minn. Stat. § 641.165 (2020). Torgerson did not object to the proposed jury instruction on Minn. Stat. § 641.165 at trial. *See State v. Cross*, 577 N.W.2d

12

721, 726 (Minn. 1998) (stating that a party's failure to object to a jury instruction at trial generally waives consideration of the issue on appeal). However, even when there is no objection to jury instructions at trial, this court has "discretion to consider [the] issue on appeal if it is plain error affecting substantial rights." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998); Minn. R. Crim. P. 31.02. The three-prong test for plain error establishes that before an appellate court reviews an unobjected-to error, there must be: an (1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings. *Griller*, 583 N.W.2d at 740 (citations omitted).

An error is plain if it is "clear" or "obvious," meaning that it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (quotations omitted). Only if we conclude that the court committed a plain error do we consider whether that error affected the defendant's substantial rights and whether we must "address the error to ensure fairness and the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740. "[F]ailure to properly instruct the jury on all elements of the offense charged is plain error." *State v. Vance*, 734 N.W.2d 650, 658 (Minn. 2007).

Appellate courts "review the [jury] instructions in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Kuhnau*, 622 N.W.2d 552, 555-56 (Minn. 2001). Here, the district court's jury instructions mirrored the language of Minn. Stat. § 641.165, which the parties do not dispute. Because the supreme court has not yet clearly required district courts to include a specific explanation of the

13

mens rea required under Minn. Stat. § 641.165, we conclude that the court's instructions, which mirrored the language of the statute, did not constitute "clear" or "obvious" error, and thus the court's error is not plain. *Vance*, 734 N.W.2d at 658.

Even assuming the district court committed plain error, the third prong of the plain-error test requires the error to affect defendant's substantial rights. *Griller*, 583 N.W.2d at 741. "[A]n error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Vance*, 734 N.W.2d at 656. The district court's omission of an element of a crime from the jury instructions has a significant effect on the verdict when the defendant submits evidence that tends to negate that element and "there is a reasonable likelihood that a properly instructed jury could have accepted the defendant's version of events." *Id.* at 661. Given the evidence presented in this case, including Torgerson's statement that, "if you would have asked me about [the knife], I would have told you," we are satisfied that there is no likelihood the verdict would have been different had the jury been given a mens rea instruction. For these reasons, we conclude Torgerson has failed to meet his burden of establishing plain error that affected his substantial rights.

**Affirmed.**