*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1638**

State of Minnesota,
Respondent,

vs.

Jermale Jerome Leonard,
Appellant.

**Filed October 6, 2025
Reversed and remanded
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-23-10182

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Mark V. Griffin, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bond, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his conviction of second-degree sale of a controlled substance in a school zone, arguing that the evidence was insufficient to sustain the jury's guilty verdict. Because the state did not prove that the sale occurred in a school zone, we reverse and remand.

## FACTS

Respondent State of Minnesota charged appellant Jermale Jerome Leonard by amended complaint with two counts of second-degree sale of a controlled substance in a school zone, two counts of third-degree sale of a controlled substance, three counts of fifth-degree possession of a controlled substance, and one count of possessing a pistol without a permit in a public place. The charges were tried to a jury.

Evidence at trial showed that on May 15, 2023, near 16th Street East and 1st Avenue South in Minneapolis, a plainclothes investigator observed a woman enter Leonard's vehicle and exit soon after. The investigator believed that Leonard and the woman had conducted a "hand-to-hand transaction." Soon after, officers arrested Leonard. A search of Leonard's vehicle revealed cocaine, methamphetamine, pills containing fentanyl, two scales, and a firearm.

An officer testified that Leonard's vehicle was stopped on the same block as Rayito de Sol, which the officer described as a "Spanish early [immersion] school for children approximately six weeks to six years old." The prosecutor asked the officer if Rayito de Sol was an "early education center," and the officer replied, "Correct."

The jury found Leonard guilty on all counts. The district court entered judgment of conviction for second-degree sale of fentanyl in a school zone and sentenced Leonard to serve 41 months in prison.

Leonard appeals.

**DECISION**

Leonard contends that the evidence was insufficient to sustain the jury's guilty verdict for the offense of conviction. Specifically, Leonard argues that the state failed to prove that his sale of a controlled substance occurred in a school zone.

As a threshold matter, the state argues that Leonard waived his school-zone argument by failing to raise it at trial. The state is wrong. The state must prove every element of the offense charged beyond a reasonable doubt. *State v. Paige*, 256 N.W.2d 298, 303 (Minn. 1977). But a defendant may waive his right to a jury trial on an element of an offense by "judicially admit[ting] the existence of that element, thereby removing the issue from the case." *State v. Berkelman*, 355 N.W.2d 394, 397 (Minn. 1984). Leonard did not provide such a waiver, so the state was required to prove that the sale occurred in a school zone.

When analyzing a sufficiency-of-the-evidence claim, our standard of review depends on whether the fact-finder reached its conclusion based on direct or circumstantial evidence. *State v. Petersen*, 910 N.W.2d 1, 6 (Minn. 2018). Here, the state relied on direct evidence—the officer's testimony regarding the location of Rayito de Sol and the service it provides—to prove that Leonard's acts occurred in a school zone. *See State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (observing that witness testimony "is direct evidence when it reflects a witness's personal observations and allows the jury to find the defendant guilty without having to draw any inferences"). "[W]hen a disputed element is sufficiently proven by direct evidence alone, . . . it is the traditional standard, rather than the circumstantial-evidence standard, that governs." *Id.* at 39. "When reviewing the

3

sufficiency of direct evidence, we painstakingly review the record to determine whether that evidence, viewed in the light most favorable to the verdict, was sufficient to permit the jurors to reach the verdict that they did." *State v. Segura*, 2 N.W.3d 142, 155 (Minn. 2024) (quotation omitted).

Here, Leonard's sufficiency-of-the-evidence challenge depends on the meaning of a statute. "In such cases, we first determine the meaning of the statute, which presents a question of statutory interpretation that we review de novo." *State v. Metcalfe*, 13 N.W.3d 704, 711 (Minn. App. 2024), *rev. denied* (Minn. Jan. 21, 2025). "Once we construe the statute, we then apply that meaning to the facts to determine whether there is sufficient evidence to sustain the conviction." *Id.* (quotation omitted).

In interpreting a statute, we try to "effectuate the intention of the legislature, reading the statute as a whole." *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 169 (Minn. 2021) (quotation omitted). We look at the plain and ordinary meaning of a statute's words and phrases to see if the language is ambiguous, meaning it is "subject to more than one reasonable interpretation." *Id.* (quotation omitted). If the language is unambiguous, we simply enforce it as written. *Id.* If the language is ambiguous, "then we may apply the canons of construction to resolve the ambiguity." *State v. Thonesavanh*, 904 N.W.2d 432 435 (Minn. 2017). "If a word is defined in a statute, that definition controls." *State v. Morgan*, 968 N.W.2d 25, 30 (Minn. 2021).

Leonard was found guilty and convicted under Minn. Stat. § 152.022, subd. 1(7)(i) (2022), which makes it a crime for a person to sell "any amount of a Schedule I or II narcotic drug" in a "school zone." Leonard does not dispute that the substances found in

4

his vehicle satisfy the statute. Rather, he focuses on whether the sale occurred in a school zone. A school zone is defined by statute as follows:

> (1) any property owned, leased, or controlled by a school district or an organization operating a nonpublic school, as defined in section 123B.41, subdivision 9, where an elementary, middle, secondary school, secondary vocational center or other school providing educational services in grade one through grade 12 is located, or used for educational purposes, or where extracurricular or cocurricular activities are regularly provided;
> (2) the area surrounding school property as described in clause (1) to a distance of 300 feet or one city block, whichever distance is greater, beyond the school property; and
> (3) the area within a school bus when that bus is being used to transport one or more elementary or secondary school students.

Minn. Stat. § 152.01, subd. 14a (2022). And under Minn. Stat. § 123B.41, subd. 9 (2022), a nonpublic school is defined as follows:

> any school, church or religious organization, or home school wherein a resident of Minnesota may legally fulfill the compulsory instruction requirements of section 120A.22, which is located within the state, and which meets the requirements of Title VI of the Civil Rights Act of 1964 (Public Law 88-352). It does not mean a public school.

In closing argument at trial, the state argued that a school zone "can be property controlled by an organization . . . operating as a school providing educational services." The state makes the same general argument on appeal, asserting that, because the statute uses the disjunctive word "or," a "'school zone' includes any property" that is "used for educational purposes." The state argues that, because it presented evidence that Rayito de Sol was a Spanish immersion school which provides education services, the state proved

5

that Rayito de Sol was within a "school zone" within the meaning of Minn. Stat. § 152.01, subd. 14a(1).

The plain language of the statute limits a "school zone" to only two types of properties: "any property owned, leased, or controlled by a school district or an organization operating a nonpublic school, as defined in section 123B.41, subdivision 9." Minn. Stat. § 152.01, subd. 14a(1). The language that follows, which begins with the word "where," further limits a "school zone" to properties that are used for certain purposes. *See Larson v. State*, 790 N.W.2d 700, 705 (Minn. 2010) (stating that "the grammatical rule of the last antecedent . . . instructs that a limiting phrase . . . ordinarily modifies only the noun or phrase that it immediately follows").

In sum, a school zone requires a particular type of property that is used for a particular purpose. Both requirements must be met. Thus, a "school zone" within the meaning of the statute does not exist unless it includes a property that is owned, leased, or controlled by a school district or by a nonpublic school as defined in statute, even if the property is otherwise used for one of the required purposes.

On appeal to this court, the state notes that at trial, "the state did not argue that Rayito de Sol was a nonpublic school." Instead, the state argued that "Rayito de Sol was operating as a school providing educational services." However, under that theory and the plain language of the statute, the state was also required to prove that Rayito de Sol was a "property owned, leased, or controlled by a school district." Minn. Stat. § 152.01, subd. 14a(1). But the state did not offer any evidence regarding the ownership of Rayito de Sol.

6

Thus, the evidence was insufficient to support the jury's finding that Leonard was guilty of selling a controlled substance within a school district.

Because the evidence was insufficient to sustain the jury's guilty verdict on the offense of conviction, we reverse and remand for the district court to enter a judgment of conviction and sentence on one of the remaining guilty verdicts that does not depend on proof that the crime occurred in a school zone. As set forth in *State v. LaTourelle*:

> [T]he proper procedure to be followed by the [district] court when the defendant is convicted on more than one charge for the same act is for the court to adjudicate formally and impose sentence on one count only. The remaining conviction(s) should not be formally adjudicated at this time. If the adjudicated conviction is later vacated for a reason not relevant to the remaining unadjudicated conviction(s), one of the remaining unadjudicated convictions can then be formally adjudicated and sentence imposed, with credit, of course, given for time already served on the vacated sentence.

343 N.W.2d 277, 284 (Minn. 1984).

Given this outcome, it is unnecessary to address Leonard's argument that the district court plainly erred by failing to instruct the jury regarding the statutory definition of a nonpublic school.

**Reversed and remanded.**