STATE OF MINNESOTA

IN SUPREME COURT

A15-1172

Court of Appeals

State of Minnesota,

        Appellant,

vs.

Renee Anita Vasko,

        Respondent.

Chutich, J.
Took no part, Hudson, J.

Filed: January 18, 2016
Office of Appellate Courts

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Jody Winters, Lester Prairie City Attorney, Amber R. Donley, Assistant City Attorney, Glencoe, Minnesota, for appellant.

Ted Sampsell-Jones, Mitchell Hamline School of Law, Saint Paul, Minnesota, for respondent.

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, for amicus curiae The Minnesota Attorney General.

Aaron Van Oort, Faegre Baker Daniels, Minneapolis, Minnesota, for amicus curiae The Appellate Practice Section of the Minnesota State Bar Association.

_____

1

1.    To determine whether a respondent's conviction is supported by sufficient evidence, an appellate court must first determine the meaning of the ordinance under which the respondent was convicted.

2.    The plain language of Lester Prairie Municipal Code section 5.5.1.2 (2014) prohibits a person from keeping a junked or abandoned vehicle or other scrap metal on her property for longer than 30 days without a special use permit.

3.    The State presented sufficient evidence to prove that respondent violated Lester Prairie Municipal Code section 5.5.1.2 because she kept an abandoned vehicle on her property for longer than 30 days without a special use permit.

Reversed and remanded.

## O P I N I O N

CHUTICH, Justice.

Respondent Renee Anita Vasko was convicted of a petty misdemeanor for violating Lester Prairie Municipal Code ("LPMC") section 5.5.1.2 (2014), which prohibits keeping certain causes of blight on a person's property. A divided panel of the court of appeals reversed. *State v. Vasko*, No. 15-1172, 2016 WL 1551666, at *2 (Minn. App. Apr. 18, 2016). The court of appeals held that the Lester Prairie ordinance was ambiguous and resolved the ambiguity in favor of Vasko. Under its interpretation of the ordinance, the court of appeals concluded that the State did not present sufficient evidence to prove Vasko's guilt beyond a reasonable doubt.

For the reasons that follow, we hold that Lester Prairie Municipal Code section 5.5.1.2 is not ambiguous. Based on its plain language, it prohibits a person from keeping a junked or abandoned vehicle or other scrap metal on her property for longer than 30 days without a special use permit. We further hold that the State presented sufficient evidence to prove that Vasko violated section 5.5.1.2 by keeping an abandoned vehicle on her property for longer than 30 days without a special use permit. Accordingly, we reverse the decision of the court of appeals and remand to the court of appeals for consideration of Vasko's remaining arguments on appeal.

## I.

Vasko owns property in the city of Lester Prairie. Lester Prairie's municipal code prohibits certain blight conditions on residents' property, including the open storage of unregistered or inoperative motor vehicles. *See* LPMC §§ 5.5.1.2, 5.5.1.3 (2014). During a routine blight inspection on September 5, 2014, Lester Prairie Chief of Police Robert Carlson saw a maroon Oldsmobile parked in Vasko's front yard. The car's registration tabs had expired in 2012. Chief Carlson determined that the car violated the Lester Prairie blight ordinance.

Chief Carlson attempted to contact Vasko. He knocked on the door of the house, but no one answered. He sent a notice regarding an ordinance violation through the regular mail but received no reply. On September 11, he sent a notice by certified mail, but it was returned undelivered. Finally, on September 29, Chief Carlson posted a notice on the door of Vasko's house.

3

The notice stated that the car was in violation of the blight ordinance, instructed Vasko to remedy the condition within 10 days, and informed her that the city would tow the car if it remained in her yard "after thirty (30) days of service." It made no representations as to whether Vasko would be subject to criminal charges for violating the blight ordinance.

Three days later, Chief Carlson returned and saw that the car was still parked in the yard. On October 24, 2014, the city towed Vasko's car.

Appellant State of Minnesota charged Vasko with violating Lester Prairie Municipal Code section 5.5.1.2, which is a misdemeanor. Before trial, the prosecutor certified the offense as a petty misdemeanor.[1] Vasko represented herself in the district court proceedings.

During the bench trial, Vasko testified that she moved her car into the garage, which was "standing empty," about a week after she saw the notice posted on her door. She further testified that she moved the car out of the garage on October 23 so that her mechanic could tow it. Vasko claimed that the city had given her permission to park her car in the yard during this period.[2]

---

[1] "Before trial, the prosecutor may certify a misdemeanor offense as a petty misdemeanor if the prosecutor does not seek incarceration, and seeks a fine at or below the statutory maximum for a petty misdemeanor." Minn. R. Crim. P. 23.04; *see* Minn. R. Crim. P. 23.01 (setting the statutory maximum fine for a petty misdemeanor at $300). A defendant charged with a petty misdemeanor does not have the right to a jury trial or to a public defender. Minn. R. Crim. P. 23.05.

[2] One of Vasko's exhibits at trial was what appeared to be an October 10, 2014 letter from the city clerk of Lester Prairie, granting Vasko permission to park her car in her yard

4

The district court found Vasko guilty of violating the blight ordinance. The court stated: "Having considered the Defendant's testimony along with that of the Chief and the City Clerk, the Court rejects Defendant's evidence. It appears to the Court that Defendant fabricated much, if not all, of the evidence purporting to show an agreement by the City to accommodate her attempts to repair the car."

A divided panel of the court of appeals reversed. *Vasko*, 2016 WL 1551666, at *2. Vasko asserted that the State did not present sufficient evidence to support her conviction. To address this argument, the court of appeals interpreted the Lester Prairie ordinance. *Id.* The court determined that the ordinance was ambiguous because it did not make clear how long a blight condition had to exist before the city could give notice requiring the owner of the property to remove it. *Id.* The court resolved this ambiguity in favor of Vasko and concluded that the State had not proven that the city gave Vasko the requisite notice. *Id.* Because it resolved the appeal on the insufficient-evidence claim, the court did not address Vasko's other arguments "regarding the city's procedure and the discredited evidence she submitted at trial." *Id.* We granted the State's petition for review.

---

from October 23 to October 25, 2014. The city clerk testified that she did not send the letter, the signature was not in her handwriting, and she had been on vacation on October 10, 2014.

II.

The State argues that the court of appeals should not have considered whether the ordinance was ambiguous because the parties did not raise the issue of ambiguity in their briefs. Generally, we consider an argument not raised in the parties' briefs to be forfeited. *See, e.g.*, *State v. Morrow*, 834 N.W.2d 715, 724 n.4 (Minn. 2013). Nonetheless, " 'it is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's . . . failure to specify issues or to cite relevant authorities.' " *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 875 (Minn. 2010) (quoting *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990)). Further, courts are encouraged to read the pleadings of pro se appellants "with an understanding eye." *Leake v. State*, 737 N.W.2d 531, 540 n.3 (Minn. 2007); *accord Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008).

The State admits that Vasko argued in her pro se brief to the court of appeals that there was insufficient evidence to convict her. Because the meaning of a criminal statute is intertwined with the issue of whether the State proved beyond a reasonable doubt that the defendant violated the statute, it is often necessary to interpret a criminal statute when evaluating an insufficiency-of-the-evidence claim. *See, e.g.*, *State v. Nelson*, 842 N.W.2d 433, 436 (Minn. 2014); *State v. Tomlin*, 622 N.W.2d 546, 548 (Minn. 2001). The same rules that apply to the interpretation of a statute apply to the interpretation of an ordinance. *Eagan Econ. Dev. Auth. v. U-Haul Co. of Minn.*, 787 N.W.2d 523, 535 (Minn. 2010). And the "first step" in interpreting a statute or ordinance "is to examine the language of the statute to determine if it is ambiguous." *Dupey v. State*, 868 N.W.2d 36, 39 (Minn. 2015).

6

Here, the court of appeals had to determine what the ordinance prohibited before it could determine whether the State had proven a violation. An appellate court may conclude that an ordinance is ambiguous even though neither party argues that it is. *See Hannuksela*, 452 N.W.2d at 673 n.7 ("[I]t is the responsibility of appellate courts to decide cases in accordance with law."). As a result, we hold that the court of appeals did not err in first interpreting the ordinance before addressing whether the State presented sufficient evidence to convict Vasko of a violation of the ordinance.

III.

We next consider whether the State presented sufficient evidence to prove that Vasko violated the Lester Prairie blight ordinance. To resolve this issue, we first must consider and interpret the ordinance.

We review issues of statutory interpretation de novo. *Nelson*, 842 N.W.2d at 436. The purpose of statutory interpretation is to ascertain the intent of the Legislature. *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013). When interpreting a statute, "we give words and phrases their plain and ordinary meaning." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010) (citing Minn. Stat. § 645.08 (2016)). "If a statute is unambiguous, then we must apply the statute's plain meaning." *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010). If, however, a statute has more than one reasonable interpretation, then it is ambiguous, and we may apply the canons of statutory construction to determine its meaning. *State v. Hayes*, 826 N.W.2d 799, 804 (Minn. 2013).

7

The Lester Prairie blight ordinance has two main sections. The first, section 5.5.1, applies only to storage of junk vehicles, abandoned vehicles, and scrap metal. *See* LPMC § 5.5.1. It provides:

> It shall be unlawful for any person . . . occupying or owning private property within the City of Lester Prairie to keep or permit to be kept any junked or abandoned vehicles or other scrap metal on such private property . . . for a period in excess of thirty (30) days without a special use permit granted by the City Council.

LPMC § 5.5.1.2. "[V]iolation of the provisions of this ordinance" is a misdemeanor. LPMC § 5.5.1.5.

The second section of the Lester Prairie blight ordinance, section 5.5.2, governs a wider range of conditions that it identifies as "causes of blight or blighting factors," including junk vehicles, accumulated trash, dilapidated structures, and poisonous plants. LPMC § 5.5.2.1 (2014). This section requires city officials to give written notice to the property owner or occupant to remove a blight condition within 10 days. LPMC § 5.5.2.2(a) (2014). It is a misdemeanor to violate "this ordinance" by failing to remove the blight condition within 10 days of receiving notice. LPMC § 5.5.2.2(c). This section also authorizes the city to remove the blight condition if the property owner does not comply with the notice. LPMC § 5.5.2.2(d).

Vasko argues that the Lester Prairie blight ordinance is ambiguous because of the interaction between the prohibition on having a blight on one's property for more than 30 days in section 5.5.1.2 and the requirement to give 10 days' notice to remove a blight condition in section 5.5.2.2. Vasko argues that sections 5.5.1 and 5.5.2 should be read together because they both deal with the same subject. According to Vasko, the most

8

sensible interpretation is that a condition is not a blight until it exists for 30 days, and then, if the city gives notice to remove, a violation occurs only if the condition is not remedied in 10 days.

The State notes that Vasko was charged with violating only the first section of the blight ordinance, specifically section 5.5.1.2. The State argues that the plain language of section 5.5.1.2 prohibits a person from keeping a car with expired registration tabs on her property for more than 30 days, and that it does *not* include any notice requirement.

We conclude that the Lester Prairie blight ordinance creates two separate misdemeanor offenses. On its face, section 5.5.1 is a self-contained ordinance. It includes a statement of purpose, definitions, a prohibition, and a penalty provision making it a misdemeanor to violate "*this ordinance*." LPMC §§ 5.5.1.1-5.5.1.5 (emphasis added). Similarly, section 5.5.2 contains its own purpose statement, prohibitions, and a penalty provision making a "violation of *this ordinance*" a misdemeanor. *See* LPMC §§ 5.5.2.1-5.5.2.2 (emphasis added). Nothing in section 5.5.1 suggests that the city must give a property owner notice before the owner is in violation of this section.

The language of the notice requirement in section 5.5.2 supports this conclusion. The notice requirement, which is in section 5.5.2.2(a), immediately follows section 5.5.2.1, which lists a series of "causes of blight or blighting factors." The notice requirement states: "The owner and the occupant of any property upon which any of the *causes of blight or blighted factors set forth in Section 1 hereof* is found to exist shall be notified . . . ." LPMC § 5.5.2.2(a) (emphasis added). The notice requirement clearly refers to the factors listed in section 5.5.2.1, the "causes of blight or blighting factors," and not to any part of

9

section 5.5.1, the ordinance under which Vasko was charged. It would be unreasonable to read the notice requirement of section 5.5.2 into section 5.5.1. *See Reiter v. Kiffmeyer*, 721 N.W.2d 908, 911 (Minn. 2006) ("[W]e will not read into a statute a provision that the legislature has omitted, either purposely or inadvertently."). As a result, the notice requirement in section 5.5.2 does not apply to Vasko's conviction under section 5.5.1.2, which creates a separate misdemeanor for distinct violations.

We conclude that section 5.5.1.2 is subject to only one reasonable interpretation. The unambiguous language of the ordinance does not require the city to give notice of an abandoned vehicle to the person violating the ordinance. Instead, the plain language of section 5.5.1.2 unambiguously prohibits a person from keeping a junked or abandoned vehicle or other scrap metal on the person's property for longer than 30 days without a special use permit.[3]

IV.

Having determined what the ordinance prohibits, we now consider whether the State presented sufficient evidence to prove that Vasko violated section 5.5.1.2. When reviewing a claim of insufficient evidence to convict, we will "uphold the district court's finding if, based on the evidence contained in the record, the district court could reasonably have found [the] defendant guilty of the crime charged." *State v. Cox*, 278 N.W.2d 62, 65 (Minn.

---

[3] Lester Prairie has since amended the ordinance to prohibit the keeping of a junked or abandoned vehicle for longer than 15 days, reduced from the 30-day period that governs Vasko's case. LPMC § 5.5.1.2 (2016).

1979). We must view the evidence in the light most favorable to the verdict. *State v. Robinson*, 536 N.W.2d 1, 2 (Minn. 1995).

Vasko violated section 5.5.1.2 if she kept an abandoned vehicle on her property for longer than 30 days without acquiring a special use permit from the city council. *See* LPMC § 5.5.1.2. After carefully considering each of the elements of section 5.5.1.2, we conclude that the State presented sufficient evidence that Vasko violated the ordinance.

Vasko's car was an "abandoned" vehicle.[4] The ordinance defines abandoned vehicle to include "any motor vehicle which . . . does not have attached to it current license plates or tabs as required by State law, and which is not stored in a garage or shed." LPMC § 5.5.1.3.1.

It is undisputed that the State proved that Vasko's car is a motor vehicle and that it did not have current registration tabs attached to it. Nonetheless, Vasko argues that her car does not meet the definition of an "abandoned vehicle" because it was not "required by State law" to have current registration tabs. Vasko cites Minnesota Statutes section 168.09, subdivision 1 (2016), which provides that no motor vehicle may be "used or operated upon the public streets or highways of the state until it is registered." Vasko asserts that the State did not prove that she had operated her car on public streets during the relevant period, and as a result, state law did not require her car to have registration tabs. We disagree.

---

[4]    Vasko also may have violated the ordinance by keeping an "inoperative vehicle" on her property for longer than 30 days. *See* LPMC §§ 5.5.1.2, 5.5.1.3.2. The district court found that the car "appeared to be inoperable," but the State produced little evidence that the car could not be "driven or propelled under its own power in its existing condition." LPMC § 5.5.1.3.2.

11

Vasko's argument ignores the definition of "using the public streets or highways" under state law. Minnesota Statutes section 168.28 (2016) defines the scope of "using the public streets or highways." It provides that "[e]very motor vehicle (except those exempted in section 168.012, and except those which are being towed . . . )" is "deemed to be one using the public streets and highways . . . if . . . it shall come *into the possession of an owner* other than as a manufacturer, dealer, warehouse operator, mortgagee or pledgee." *Id.* (emphasis added). On its face, this statute provides that any motor vehicle in the ownership and possession of someone who is not a manufacturer, dealer, warehouse operator, mortgagee, or pledgee is considered "to be one using the public streets and highways" under chapter 168.[5]

Here, Vasko owned and possessed the car that was parked in her yard. Nothing in the record suggests that Vasko kept the car as a dealer, mortgagee, or in any other exempted capacity. Vasko's car met the statutory definition of "one using the public streets and highways," and as a result, it required registration. *See* Minn. Stat. §§ 168.09, subd. 1, 168.28. Consequently, Vasko's car lacked registration tabs "as required by State law." *See* LPMC § 5.5.1.3.1.

The State also presented sufficient evidence to prove that Vasko's car was not being stored in a garage or shed, the second part of the ordinance's definition of an abandoned vehicle. Chief Carlson saw the car in Vasko's yard on four different occasions: September

---

[5]     *See also State v. Peterson*, 159 Minn. 269, 272-73, 198 N.W. 1011, 1012 (1924) (noting that the Legislature's decision to "adopt[] past or prospective use of the public highways" as a basis for taxation had the "merit of certainty" in enforcement).

5, September 29, October 2, and October 24. Vasko did testify that about one week after the notice was posted on her house, she moved the car into her garage, which she said was "standing empty." The district court, however, rejected Vasko's evidence, and we defer to that credibility determination. *See State v. Barshaw*, 879 N.W.2d 356, 366 (Minn. 2016) ("In determining whether the evidence is sufficient, we defer to the fact-finder's credibility determinations and 'assume that the fact-finder disbelieved any evidence that conflicted with the verdict.' " (quoting *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015)). The State proved that Vasko's car lacked registration tabs as required by state law and that it was not stored in a garage or shed. Thus, it was considered an abandoned vehicle under the Lester Prairie ordinance.

The State presented sufficient evidence that Vasko's car was kept in her yard for longer than 30 days without a special use permit, in violation of section 5.5.1.2. Vasko admitted at trial that she did not obtain a special permit from the city council to keep the car in her yard. Chief Carlson saw the car in Vasko's yard four times during a seven-week period, between September 5 and October 24. Again, we defer to the district court's rejection of Vasko's testimony that she moved the car into her garage for a period after the notice was posted on her house. *See Barshaw*, 879 N.W.2d at 366. Viewing the record in the light most favorable to the verdict, this evidence is sufficient to prove beyond a reasonable doubt that the car was in Vasko's yard for longer than 30 days.

13

V.

In conclusion, we reverse the court of appeals' decision that reversed Vasko's conviction.[6] Because the court of appeals did not address all of Vasko's arguments on appeal, we remand for further consideration of any remaining challenges to the conviction.

Reversed and remanded.


HUDSON, J., took no part in the consideration or decision of this case.

---

[6]      Vasko argues that state law preempts the Lester Prairie blight ordinance and that the ordinance is unconstitutionally vague. We decline to address these issues because Vasko raised them for the first time before our court. *See In re Welfare of C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981) (declining to reach constitutional issues that were not raised before the district court).