*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0792**

In re Resolution Reversing the Planning Commission's Decision to Grant the Petition for
an Environmental Assessment Worksheet (EAW)
for a Hotel at Sundby Road and West Page Street.

**Filed January 29, 2024**
**Affirmed**
**Reyes, Judge**

City of Duluth
File No. 23-0367R

Rebecca Mulenburg, Duluth, Minnesota (self-represented appellant)

Rebecca St. George, Duluth City Attorney, Paige V. Orcutt, Elizabeth Sellers Tabor, Assistant City Attorneys, Duluth, Minnesota (for respondent City of Duluth)

R. Thomas Torgerson, Jesse W. Smith, Hanft Fride, Duluth, Minnesota (for intervenor-respondent Kinseth Hospitality Companies)

Considered and decided by Reyes, Presiding Judge; Segal, Chief Judge; and Connolly, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

In this certiorari appeal, relator challenges respondent-city's denial of a petition for an environmental-assessment worksheet (EAW) concerning a hotel-construction project proposed by respondent-developer. Relator argues that (1) the city council lacked authority to substitute itself as the responsible governmental unit (RGU) because the city's planning commission was designated as the RGU by city ordinance; (2) respondent-city erred by

applying its ordinance provisions to allow an appeal of the city planning commission's decision to the city council; and (3) the city council erred by reversing the city planning commission's decision that granted relator's EAW petition. We affirm.

## FACTS

To give context to the facts in this case, we begin by providing background on the Minnesota Environmental Policy Act, Minn. Stat. §§ 116D.01-.11 (2022) (MEPA).[1] The legislature enacted MEPA in 1973 to encourage harmony between humans and the environment, promote efforts to prevent or eliminate danger to the environment, and increase understanding of the environment. Minn. Stat. § 116D.01. MEPA's requirements facilitate informed decisionmaking and environmental review of the impact of governmental actions on the environment. Minn. Stat. §§ 116D.03-.04. "Governmental action" includes projects that are approved by units of government. Minn. Stat. § 116D.04, subd. 1a(d).

An EAW is "a brief document which is designed to set out the basic facts necessary to determine whether an environmental impact statement is required for a proposed action." *Id.*, subd. 1a(c). An EAW is required when "material evidence accompanying a petition by not less than 100 individuals . . . demonstrates that, because of the nature or location of a proposed action, there may be potential for significant environmental effects." *Id.*, subd. 2a(e). The petition for an EAW must be submitted to the Minnesota Environmental Quality Board (EQB), and the EQB chair then determines the appropriate RGU and

---

[1] In 2023, the legislature amended Minn. Stat. § 116D.04, subd. 5a. 2023 Minn. Laws ch. 25, § 37, at 20. The amendment does not change the substance of the applicable section.

2

forwards the petition to it. *Id.* The RGU must decide whether an EAW is necessary within 15 days after the RGU receives the petition, or within 30 days if the EQB agrees to extend the deadline. *Id.* "A person aggrieved by a final decision on the need for an [EAW] . . . is entitled to judicial review of the decision under [Minnesota statutes] sections 14.63 to 14.68." *Id.*, subd. 10.

Minnesota Rules 4410.0200 to 4410.6500 (2021) are authorized by MEPA and apply to all governmental actions. *Id.*, subd. 5a; Minn. R. 4410.0300, subps. 1 and 2. The rules require RGUs to be "responsible for verifying the accuracy of environmental documents and complying with environmental review processes in a timely manner" and provide that decisions by an RGU on the need for an EAW are final. Minn. R. 4410.0400, subps. 2, 4. The rules outline the procedure the EQB must use to determine the appropriate RGU, Minn. R. 4410.0500, .1100, subp. 5; the standard the RGU must use when determining if an EAW should be prepared, Minn. R. 4410.1100, subp. 6, .1700, subp. 7; and the timeline for the RGU to issue its decision, Minn. R. 4410.1100, subp. 7.

With that background, we turn to the facts. On March 14, 2023, the EQB notified respondent City of Duluth (the city) that it had received a petition for an EAW, submitted by relator Rebecca Mulenburg, to be prepared for a hotel-construction project (the project) at a property at Sundby Road and West Page Street in Duluth (the property). The EQB designated the city as the RGU to review the petition. The city notified the EQB that "the decision regarding the petition will be made by the City of Duluth Planning Commission" and extended the deadline for the city's response to April 25, 2023, which the EQB acknowledged.

Prior to the commission's meeting, city planning staff (staff) evaluated the petition against the factors specified in Minn. R. 4410.1700, subp. 7, drafted proposed findings of fact, and recommended that the planning commission deny the petition. Staff concluded that "the potential significant environmental effects of the Project have been anticipated and will be controlled through provisions in the City zoning review and building permit process." Nevertheless, on April 11, 2023, the planning commission heard comments from the public regarding Mulenburg's petition; identified concerns about hydrology, impacts to the overall watershed, floodplain impacts, and thermal effects to nearby Miller Creek; and voted in favor of requiring an EAW.

On April 14, 2023, the project developer, respondent Kinseth Hospitality Companies (Kinseth), appealed the planning commission's decision to the city council under the Duluth, Minn., Legislative Code (DCO) § 50-37.1(O)(4) (2023). Kinseth requested that the planning commission's decision be reversed because the concerns stated in the petition had been fully considered and addressed by the city's administrative process.

On May 8, 2023, the city council heard the appeal. Mulenburg and other members of the public spoke in favor of requiring an EAW, and Mulenburg challenged the city council's authority under the DCO to hear the appeal. At the conclusion of the hearing, the city council reversed the planning commission's decision after determining that the record did not support the commission's findings and conclusions in the commission's motion granting the petition.

Mulenburg filed a petition for writ of certiorari.

**DECISION**

Mulenburg argues that (1) the city erred by allowing the city council to take the place of the planning commission as the RGU; (2) the city council exceeded its authority under the DCO by hearing Kinseth's appeal from the planning commission's decision; and (3) the city council made an arbitrary and capricious decision to deny the EAW petition.[2] We address each argument in turn.

## I.    The EQB designated the city as the RGU, consistent with MEPA.

Mulenburg argues first that the city unlawfully and arbitrarily substituted the city council as the RGU after the EQB had accepted the planning commission as the designated RGU. The record belies Mulenburg's argument. In multiple notifications from the EQB to the city in March 2023, the EQB stated that it had "determined that the *City of Duluth* is the appropriate *governmental unit* to decide the need for an EAW." (Emphasis added.) No subsequent communication between the EQB and the city shows that the EQB accepted the planning commission alone as the RGU.

Furthermore, the EQB's designation of the city as the RGU was consistent with the requirements of MEPA and the DCO, as well as state law governing municipal structure. As noted above, MEPA and its associated rules govern the EQB's selection of an RGU. The interpretation and application of statutes and rules to undisputed facts are questions of

---

[2] Mulenburg argued to the city council that any decisionmaking power it might have to hear an appeal of the planning commission as RGU was time-barred because the city council decision was issued after the deadlines established under Minn. Stat. § 116D.04, subd. 2a(e), and Minn. R. 4410.1100, subp. 7. On appeal, Mulenburg only mentions this argument in her facts section but fails to supplement the argument with any legal support. The issue is therefore not properly before us, and we do not address it. *Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn. 1982) (noting that an unbriefed issue is deemed waived).

law that we review de novo. *In re Env't Assessment Worksheet for 33rd Sale of State Metallic Leases*, 838 N.W.2d 212, 216 (Minn. App. 2013), *rev. denied* (Minn. Nov. 26, 2013). We apply the same rules to the interpretation of an ordinance as to the interpretation of a statute. *State v. Vasko*, 889 N.W.2d 551, 556 (Minn. 2017).

MEPA provides that a "governmental unit" is "any state agency and any general or special purpose *unit of government in the state* including, but not limited to . . . *cities*." Minn. Stat. § 116D.04, subd. 1a(e) (emphasis added). A city planning commission is "merely a level of government within [a] city's governmental structure." *Moreno v. City of Minneapolis*, 676 N.W.2d 1, 5 (Minn. App. 2004); Minn. Stat. §§ 462.352, subd. 3 (2022), .354, subd. 1 (2022). The city council "is the governing body of the [City of Duluth]." DCO § 50-36.1 (2021). Thus, the relevant authorities contemplate a city, not a planning commission alone, to be an RGU.

**II.     The city did not exceed its authority under the DCO by allowing the city council to review the planning commission's decision to grant the EAW.**

Mulenburg argues that the city erroneously relied on Chapter 50 of the DCO to allow Kinseth to appeal the planning commission's decision to the city council and that Kinseth's only appeal route was through this court under Minn. Stat. § 116D.04, subd. 10.[3] We do not agree.

---

[3] Beyond imposing time limits for an RGU to determine whether an EAW is necessary and establishing that an RGU's decision is final, MEPA and its corresponding rules do not address whether a municipality may provide an administrative appeal process for decisions of the RGU. The city and Mulenburg indicate that they have received communication from the EQB stating that it is not opposed to an RGU having a separate appeal or review procedure. We have not seen or reviewed the referenced communication because it is not part of the record, and we express no opinion on this issue.

In interpreting laws, such as statutes and ordinances, the object is to "ascertain and effectuate the intention of the legislature," and, if possible, "[e]very law shall be construed . . . to give effect to all its provisions." Minn. Stat. § 645.16 (2022). "[W]hen interpreting a statute we read and construe the statute as a whole, giving effect wherever possible to all of its provisions, and interpreting each section in light of the surrounding sections to avoid conflicting interpretations." *Eclipse Architectural Grp., v. Lam*, 814 N.W.2d 692, 701 (Minn. 2012) (quotation omitted). We must first determine whether a statute is ambiguous. *Vasko*, 889 N.W.2d at 556. If a statute is not ambiguous, its plain language controls. *Id.*

This case involves the interplay between two chapters of the DCO. Chapter 2 governs administration of the city and provides that, "[i]n addition to the powers and duties granted to the planning commission" by the DCO, city ordinances, and state law, "the planning commission shall serve as the [RGU] and conduct environmental reviews" under MEPA. DCO § 2-41 (2008). Chapter 2 is silent regarding appeals of the planning commission's decisions as an RGU. Most of the planning commission's responsibilities are codified under Chapter 50, and include review, recommendation, or approval functions regarding development within the city. DCO § 50-36.2(D) (2010). Chapter 50 governs the planning commission's creation and states that the commission "shall have all powers authorized for a planning commission" under state law and the DCO, outlines the planning commission's powers in all city zoning districts, and indicates that it may have other powers under Chapter 50 or other law. DCO § 50-36.2 (2010). Chapter 50 also provides that the city council is the "governing body of the city" and that, in the context of Chapter

7

50, the city council has the power to "hear appeals of decisions of the planning commission" under section 50-37.1(O). DCO § 50-36.1 (2021). Persons or city departments "affected by[] *any decision of the planning commission* may appeal that decision to the [city] council." DCO § 50-37.1(O)(4)(a) (emphasis added).

Mulenburg cites DCO § 50-36.1 to argue that the city council's power to hear appeals of the planning commission is restricted to "the context" of Chapter 50 and that because Chapter 50 does not reference the planning commission's role as the RGU for environmental reviews, allowing an appeal under Chapter 50 is erroneous. However, Chapter 50's stated purpose includes promoting, preserving, and enhancing the city's "water resources and environment" and protecting them from "adverse effects caused by poorly sited or incompatible development in wetlands, shorelands and floodplains." DCO § 50-2 (2012). Environmental review is contemplated when a development project implicating Chapter 50 is initiated. DCO § 50-6 (2010).

Although Mulenburg references multiple DCO provisions to support that the planning commission has final decisionmaking power, those provisions actually place the planning commission in an advisory role. Chapter 45, regarding streets, sidewalks, and public grounds, requires the city council to refer matters regarding placement of objects or materials on public sidewalks or boulevards to the planning commission for its "*review and recommendations*." DCO § 45-4.1 (2002) (emphasis added). Chapter 43, regarding sewers and sewage disposal, requires an "investigation and report and *recommendation*" by the planning commission before the city council can issue discharge permits for concrete wastewater. DCO § 43-59 (1991) (emphasis added).

8

Further, state law and the Duluth City Charter (the charter) also support that the planning commission's role is advisory. Under state law, a municipality may create a planning commission. Minn. Stat. §§ 462.352, subd. 3, .354, subd. 1. A planning commission created by municipal charter or ordinance "*shall be advisory*, except as other powers and duties are imposed on it . . . by statute, by charter, or by ordinance consistent with the municipal charter." Minn. Stat. § 462.354, subd. 1. The charter authorizes the city council to provide for appropriate "boards or commissions which it deems desirable *to serve in an advisory capacity*, or to perform quasi-judicial functions, or to act as a board of appeal in the administration of regulatory ordinances, or to perform such other proper functions *as the council may direct*." Duluth, Minn., City Charter § 27 (2008) (emphasis added). The charter authorizes the city council to create a planning commission but indicates that the council retains authority over the commission. *Id.*

We conclude that the plain language of the DCO, the charter, and state law support that the planning commission's role is advisory to the city and that the city council retains broad power to hear any appeal of the planning commission's decisions. *See* DCO § 50-37.1(O)(4)(a) (Persons or city departments "affected by[] any decision of the planning commission may appeal that decision to the [city] council."). We discern no error by the city by hearing Kinseth's appeal.

9

**III. The city council's decision to reverse the planning commission's determination regarding the need for an EAW was not arbitrary or capricious.**

Mulenburg appears to contend that, because the city council failed to comply with MEPA requirements when it reviewed and reversed the planning commission's decision, its decision to reverse was arbitrary and capricious. We are not persuaded.

We defer to an RGU's EAW decision unless it was based on "an error of law, is arbitrary and capricious, or is unsupported by substantial evidence." *In re Env't Impact Statement*, 849 N.W.2d 71, 75 (Minn. App. 2014) (quotation omitted). "A relator has the burden of proving that the RGU's findings are unsupported by the evidence as a whole." *Id.* An RGU's decision is arbitrary or capricious if the RGU (1) "relied on factors the legislature never intended it to consider"; (2) "entirely failed to consider an important aspect of the problem"; (3) "offered an explanation for the decision that runs counter to the evidence"; or (4) "rendered a decision so implausible that it could not be ascribed to a difference in view or the result of agency expertise." *Watab Twp. Citizen All. v. Benton Cnty. Bd. of Comm'rs*, 728 N.W.2d 82, 89 (Minn. App. 2007), *rev. denied* (Minn. May 15, 2007).

Mulenburg focuses her argument on the city council's conduct at the appeal hearing, not on the contents of the planning commission file or the staff's findings and recommendation. Although Mulenburg argues that the city council failed to consider the criteria under Minn. R. 4410.1700, subp. 7, and the facts presented in the petition, the record does not support her position. For each concern listed in the petition, staff provided detailed findings addressing each factor under Minn. R. 4410.1700, subp. 7. The city

council reviewed the petition and the planning-commission file, held a public hearing, and adopted the staff's findings before voting to reverse the planning commission.

Further, although Mulenburg seems to imply that the city council's decision was not supported by "substantial evidence," she has not cited to any legal authority or provided analysis to support her conclusory assertions. Inadequately briefed issues are not properly before an appellate court, *Melina*, 327 N.W.2d at 20, and we therefore decline to address Mulenburg's argument.

**Affirmed.**