# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-2021

State of Minnesota,
Respondent,

vs.

Allison Lorraine Waln,
Appellant.

**Filed September 22, 2025**
**Reversed**
**Bjorkman, Judge**


Crow Wing County District Court
File No. 18-CR-24-2140

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Michael Adkisson, Assistant County Attorney, Brainerd, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Erik I. Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Bratvold, Judge; and Slieter, Judge.

## SYLLABUS

The term "extended," as used in Minn. Stat. § 169.444, subd. 1 (2022), means that the stop-signal arm on a school bus must be fully stretched out before an approaching driver is required to stop.

## OPINION

**BJORKMAN**, Judge

Appellant challenges her conviction of failing to stop for a school bus under Minn. Stat. § 169.444, subd. 2(a) (2022), arguing that the evidence is insufficient to prove her guilt because video evidence shows that she was less than 20 feet away from the school bus at the time the stop-signal arm was extended. Because we agree that the uncontested video evidence establishes that appellant did not violate the statute, we reverse.

## FACTS

Respondent State of Minnesota charged appellant Allison Lorraine Waln with failing to stop for a school bus while driving on a public roadway in Baxter. Waln pleaded not guilty, and the district court held a one-day jury trial.

At the trial, the jury heard testimony from the bus driver involved in the incident. Bus driver testified that, on April 2, 2024, he began his workday by completing a routine safety inspection of his school bus's mechanical components, tires, and lights. After confirming the bus passed inspection, bus driver proceeded on his regular after-school route.

While on that route, bus driver was slowing down on a straight stretch of roadway in anticipation of a stop when he observed an individual, later identified as Waln, approaching from the opposite direction in a maroon Ford F-150 truck. When the bus was between 200 and 300 feet away from the stop, bus driver activated the bus's amber warning lights in accordance with standard safety protocol. He then brought the bus to a complete stop, at which point he estimated that Waln's truck was approximately 80 to 100 feet away

from the bus. After stopping, bus driver opened the bus's doors, triggering its stop-signal arm to extend, its flashing red lights to engage, and cameras mounted on the exterior of the bus to begin recording. Because bus driver was unsure whether Waln's truck was going to stop, he put his arm up to physically prevent the children from exiting the bus. Bus driver then observed Waln drive past the stop-signal arm.

Upon returning to the bus garage, bus driver completed a "school bus stop arm violation report." In preparing the report, bus driver again inspected the safety lights on his school bus, confirming that they were all functioning correctly. The report included the truck's license-plate number, which was obtained from the video footage of the incident as captured by the bus-mounted cameras.

The investigating police officer testified that he received a copy of the report the next day. Using the license-plate number listed in the report, officer identified Waln as the driver of the truck. He contacted Waln by phone; she confirmed she was driving the truck that passed the school bus. Officer then reviewed the above-referenced video footage. He made two recordings of the footage using his cell phone that were played for the jury.

The first video provides a clear view of Waln driving the maroon truck. The second video shows Waln driving past the stopped bus and captures the movement of the stop-signal arm with its flashing red light in the video frame. The video also includes an indicator that distinguishes when the arm is moving and when it has completed its extension. This feature in combination with the video's timer overlay showed that it took approximately two seconds for the stop-signal arm to complete its extension. In the same

3

second that the stop-signal arm reached its full extension, the front of Waln's truck enters the frame and then continues past the bus.

Finally, the jury heard from Waln herself. Waln explained that she drove by the school bus but did not see any "yellow flashers" warning her that the bus was coming to a stop. She admitted seeing the stop-signal arm and the red flashing lights but only when she "was already even with the bus."

The jury found Waln guilty as charged, and the district court imposed a stayed 30-day jail sentence and a fine.

Waln appeals.

## ISSUE

Is the evidence sufficient to sustain Waln's conviction of failing to stop for a school bus?

## ANALYSIS

Waln argues that the state provided insufficient evidence to convict her because the uncontested video evidence shows that she was within 20 feet of the school bus at the time that its stop-signal arm was extended, thus "exonerat[ing]" her under the statute. When a sufficiency-of-the-evidence claim turns on the meaning of the statute under which the defendant was convicted, we review that question of statutory interpretation de novo. *State v. Henderson*, 907 N.W.2d 623, 625 (Minn. 2018). In doing so, we first determine the meaning of the statute, then apply that meaning to the facts of the case to determine whether the evidence is sufficient to sustain the conviction. *State v. Bradley*, 4 N.W.3d 105, 109 (Minn. 2024).

4

The goal of statutory interpretation is to "ascertain and effectuate" the intent of the legislature. Minn. Stat. § 645.16 (2024). The first step in our statutory-interpretation analysis is to determine whether the statute's language is ambiguous, meaning that it has more than one reasonable interpretation. *Henderson*, 907 N.W.2d at 625. If a statute is unambiguous, we apply its plain meaning. *State v. Vasko*, 889 N.W.2d 551, 556 (Minn. 2017). In determining a statute's plain meaning, we read the statute "as a whole" and consider its "text and textual context." *State v. Letourneau*, 23 N.W.3d 386, 391 (Minn. 2025) (quotation omitted).

The statute at issue here provides:

> When a school bus is stopped on a street or highway . . . and is displaying an *extended* stop-signal arm and flashing red lights, the driver of a vehicle approaching the bus shall stop the vehicle at least 20 feet away from the bus. The vehicle driver shall not allow the vehicle to move until the school bus stop-signal arm is retracted and the red lights are no longer flashing.

Minn. Stat. § 169.444, subd. 1 (emphasis added). If a person "fails to stop a vehicle or to keep it stopped" as required by Minn. Stat. § 169.444, subd. 1, that person is "guilty of a misdemeanor." *Id.*, subd. 2(a).

Both parties assert that the statute is unambiguous, but they urge different conclusions as to its plain meaning. Waln argues that the term "extended," as used in Minn. Stat. § 169.444, subd. 1, plainly requires a stop-signal arm to be "fully extended" before a driver is required to stop; she asserts that partial extension is not enough. The state

5

contends that "extended" means "any type of observable extension of the stop-signal arm."[1]

The term "extended" is not statutorily defined. *See* Minn. Stat. § 169.011 (2022) (defining traffic-regulation terms). But we may look to dictionary definitions to ascertain its plain meaning. *State v. Cummings*, 2 N.W.3d 528, 533 (Minn. 2024). Some dictionaries define "extended" to mean "[s]tretched or pulled out." *The American Heritage Dictionary of the English Language* 627 (5th ed. 2018). Others define it as "fully stretched out." *Merriam Webster's Collegiate Dictionary* 443 (11th ed. 2014); *Webster's Third New International Dictionary* 804 (1993). And others define it as "[s]tretched out to the full" and "[o]f an arm, spear, etc.: [o]utstretched." 5 *The Oxford English Dictionary* 595 (2d ed. 1989).

All these definitions evoke an image of something lengthened to its fullest extent. Three of the dictionaries incorporate the term "full" or "fully" in defining "extended" as the word is used to describe a physical object. *Id.*; *Merriam Webster's Collegiate Dictionary*, *supra*, at 443; *Webster's Third New International Dictionary*, *supra*, at 804. This consensus supports Waln's argument that the plain and ordinary meaning of "extended," as used in Minn. Stat. § 169.444, subd. 1, requires a stop-signal arm to be fully stretched out, such that it cannot be extended farther.

---

[1] Waln also argues that for a vehicle to be "approaching" a school bus, as the term is used in Minn. Stat. § 169.444, subd. 1, the vehicle must be at least 20 feet away from the bus. She submits—and the state agrees—that a vehicle within a 20-foot range is no longer "approaching," but passing by the bus. Because the parties do not dispute the meaning of "approaching," we do not interpret this statutory term.

6

This plain meaning is bolstered by two additional considerations. First, the adjective "extended" used to modify "stop-signal arm" is the past participle of the verb "extend," which implies a completed action or static state. *See State v. Gutzke*, 996 N.W.2d 219, 224 (Minn. App. 2023) (stating that we "determine the plain meaning of statutory words and phrases by construing them according to the rules of grammar and common usage"), *rev. denied* (Minn. Dec. 19, 2023). Indeed, the legislature could have used the present participle adjective "extending" to modify "stop-signal arm," but did not do so.

Second, interpreting "extended" to mean fully stretched out aligns with the broader statutory context. *See Letourneau*, 23 N.W.3d at 391 (requiring consideration of statutory terms in context). Minn. Stat. § 169.444, subd. 1, not only specifies that a motorist must stop at least 20 feet away from a school bus when the bus is "displaying an *extended* stop-signal arm and flashing red lights," it also specifies that the motorist must remain stopped until the "stop-signal arm is *retracted* and the red lights are no longer flashing." (Emphases added.) The juxtaposition of the terms "extended" and "retracted" suggests opposite physical states of the stop-signal arm. Interpreting these terms to require *full* extension and *full* retraction comports with the requirement to "read criminal statutes strictly, because only conduct that the legislature has clearly identified as criminal can warrant punishment." *Gutzke*, 996 N.W.2d at 226 (citing *United States v. Lanier*, 520 U.S. 259, 265-66 (1997)).

The legislature did not define "retracted," *see* Minn. Stat. § 169.011, but dictionaries define it as the past tense of the verb "retract," which means "[t]o draw back or in." *The*

7

*American Heritage Dictionary of the English Language*, *supra*, at 1499.[2]  Again, use of the past participle of the verb "retract" to modify "stop-signal arm" implies the completed process of being drawn back.  This meaning mirrors Waln's interpretation of "extended"— that the process of extending must be completed such that an object is fully stretched out.  Consequently, Waln's interpretation promotes greater consistency throughout the broader language of the statute.  Because Waln's interpretation is the only reasonable interpretation of the term "extended" in the context of Minn. Stat. § 169.444, subd. 1, we must apply its plain meaning.  *Cf. Letourneau*, 23 N.W.3d at 394 (explaining that an interpretation is "unreasonable" when it is "clearly inconsistent" with the broader statute).

In sum, we hold that the plain meaning of the term "extended," as used in Minn. Stat. § 169.444, subd. 1, requires a school bus's stop-signal arm to be fully stretched out before an approaching driver must stop.

We next turn to whether the state presented sufficient evidence to prove that Waln violated the statute.  When reviewing a sufficiency challenge, we analyze the record "to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989).  We assume that the jury believed the state's witnesses and disbelieved any contrary evidence.  *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).  We will not disturb a jury's verdict if the jury, having properly considered the

---

[2] "Retract" is similarly defined by other dictionaries as "to draw or pull back," *Merriam Webster's Collegiate Dictionary*, *supra*, at 1064; "to draw or pull back or in," *Webster's Third New International Dictionary*, *supra*, at 1939; and "[t]o draw or pull (something) back," 13 *The Oxford English Dictionary*, *supra*, at 787.

presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the offense charged. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

The parties do not dispute that the video evidence shows Waln's truck was within 20 feet of the school bus at the time that the stop-signal arm was fully stretched out. Indeed, the front of Waln's truck was adjacent to the stop-signal arm almost immediately after it reached full extension.[3] Because a stop-signal arm is not "extended" until it is fully stretched out, the uncontroverted evidence shows that Waln's failure to stop did not violate the statute. Minn. Stat. § 169.444, subd. 1 (stating that a driver must stop their vehicle "at least 20 feet away from the bus" when the bus is displaying an extended stop-signal arm).

We are not persuaded otherwise by the state's argument that bus driver's testimony is sufficient to support the jury's verdict. Bus driver testified that Waln's truck "went through the stop arm" and did not stop 20 feet away from the bus. The video evidence corroborates this observation. But because bus driver's eyes were "dr[awn] . . . towards [Waln's] vehicle," he was not focusing on the stop-signal arm itself. He provided no testimony about the progression of the stop-signal arm's extension or Waln's distance from the bus at the time the arm completed its extension. Bus driver's testimony is, therefore, consistent with the video evidence showing Waln driving past the stop-signal arm at the same moment the arm stopped in its fully stretched out position.

---

[3] In its brief, the state argued that the video evidence may skew the perception of distance. But at oral argument, it acknowledged that the "video speaks for itself."

9

On this record, we conclude that the evidence is insufficient to support the jury's finding of guilt.

## DECISION

The term "extended," as used in Minn. Stat. § 169.444, subd. 1, means that a school bus's stop-signal arm must be fully stretched out before a driver is required to stop at least 20 feet away. Because Waln was within 20 feet of the school bus before the stop-signal arm was fully stretched out, the evidence is insufficient to sustain her conviction.

**Reversed.**